IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PAULSBORO REFINING COMPANY, LLC,

    Plaintiff,

  v.

SMS RAIL SERVICE, INC.,

    Defendant.

Civil Action
No. 12-2828 (JBS/KMW)

**OPINION**

APPEARANCES:

Christopher R. Gibson, Esq.
Archer & Greiner, PC
One Centennial Square
PO Box 3000
Haddonfield, NJ 08033-0968
    Attorney for Plaintiff Paulsboro Refining Company, LLC

Robert Anthony Klein, Esq.
Berkowitz Klein LLP
629 B Swedesford Road
Swedesford Corporate Center
Malvern, PA 19355
    Attorney for SMS Rail Service, Inc.

**SIMANDLE**, Chief Judge:

I. **INTRODUCTION**

    Defendant SMS Rail Service provides railroad services for Plaintiff Paulsboro Refining Company on 5.8 miles of railroad track that Plaintiff owns. Plaintiff wishes to terminate Defendant's contract, an action which requires approval from the federal Surface Transportation Board ("STB") so that Defendant can "abandon" the rail line. The present litigation involves a

1

dispute regarding which party is responsible for paying the costs of seeking this approval from the STB. Plaintiff filed a petition with the STB seeking approval to terminate Defendant's service. Plaintiff then filed this contract action in the Superior Court of New Jersey, seeking costs, damages, and declaratory relief establishing Defendant's responsibility for the costs of obtaining the STB's approval. Defendant removed the action to this Court.

The action comes before the Court on three motions: (1) Defendant's Motion to Refer Federal Issues to the STB And for a Stay Pending the STB's Decision [Docket Item 3]; (2) Plaintiff's Motion to Remand [Docket Item 10]; and (3) Defendant's Motion for Leave to File Sur-Reply [Docket Item 16][1]. The Court heard Oral Argument on December 17, 2012. The principal issue to be decided is whether the Court has jurisdiction to adjudicate Plaintiff's claim that the Defendant railroad has breached the parties' rail services agreement. Because this action only involves a contract dispute between non-diverse parties regarding which party must pay the costs of obtaining STB approval, as to which no federal question is presented, the Court lacks jurisdiction. Plaintiff's Motion to Remand will be granted. Defendant's Motion to Refer and to Stay will be dismissed as moot.

---

[1] Defendant's motion to file a sur-reply has been granted and that submission has been considered herein.

## II. BACKGROUND

### A. The State Court Complaint

In April of 2012, Plaintiff Paulsboro Refining Company LLC[2] ("PRC") filed a Complaint in New Jersey state court, specifically the Gloucester County Superior Court, against Defendant SMS Rail Service, Inc. ("SMS"). PRC's office is located in Paulsboro, New Jersey, and SMS's principal place of business is in Bridgeport, New Jersey. (Compl. ¶¶ 1-2.) The Complaint sought declaratory relief and damages under state law for SMS's alleged breach of an agreement to service and maintain railroad tracks owned by PRC. (Compl. ¶ 3.)

PRC currently owns a petroleum refinery occupying 970 acres in Greenwich Township, Gloucester County. (Compl. ¶ 4.) The refinery contains approximately 5.8 miles of trackage. In 2000, PRC entered into a "Rail Line Service Agreement" (the "Service Agreement") with SMS. (Compl. ¶ 6.) Pursuant to the Service Agreement, SMS agreed to maintain and service approximately 5.8 miles of private rail line, which PRC owned and used in its refinery operations. (Compl. ¶ 7.) In 2010, PRC and SMS amended

---

[2]In December 2010, the PBF Holding Company purchased the refinery, which had been previously owned by the Valero Refining Company - New Jersey ("Valero"), and renamed it the Paulsboro Refining Company. (Notice of Removal ¶ 5.) The Service Agreement, which PRC attached to its Complaint, references Valero.

the Service Agreement, creating the "Second Amendment to Rail Service Agreement" ("Second Amendment").[3] (Compl. ¶ 8.) The Second Amendment allegedly permits PRC to terminate the Service Agreement by providing SMS with 90 days written notice of its intention to terminate. (Compl. ¶ 9.) Section 10 of the Service Agreement states that Defendant agrees, at the expiration or termination of the contract, to "yield up" the rail line in clean, neat, orderly, repaired condition and to remove its railcars and equipment. (Compl. ¶ 10.)

On September 22, 2011, PRC notified SMS in writing that PRC was terminating the Service Agreement and planning to hire another rail service provider. (Compl. ¶ 11.) On October 27, 2011, PRC's Senior Vice Present wrote to SMS's President, referred to the September 22, 2011 termination notice, confirmed that the Service Agreement would terminate on December 21, 2011, and reminded SMS of its obligation to yield the rail line. (Compl. 12.)

On November 2, 2011, SMS's counsel responded to the September 22, 2011 letter and stated that SMS could not cease providing rail service until the Surface Transportation Board ("STB") authorized abandonment of the rail line, that SMS had no obligation to apply to the STB for authorization to abandon the

---

[3] Valero and SMS created the First Amendment in 2002, when they modified the Service Agreement to permit SMS to sublet a portion of the rail line. (Compl. Ex. B; Second Amendment ¶ B.)

4

line, and that STB would not do so. (Compl. ¶ 13.) The letter stated that the Service Agreement "is silent as to who is to seek the abandonment authorization if the [Service] Agreement is to be terminated, and it may well be that the 90-day cancellation notice can be given only after the abandonment authorization has been received from the [STB]." (Compl. Ex. E; SMS's November 2, 2011 letter to PRC at 1.) SMS further explained that anyone can seek a third-party or adverse abandonment application and, if PRC wanted to have SMS cease operations, it could file such an application with the STB. In addition, SMS emphasized that, absent STB approval, only SMS can operate on the tracks.

Plaintiff argues that, assuming STB authorization is required before SMS can cease operations, SMS is contractually obligated to seek such authority from the STB. (Compl. ¶ 14.) Section 6 of the Service Agreement states that SMS "shall be responsible for obtaining and keeping in effect all licenses, permits, and approvals required by federal or state law or regulation relating to the operation, rail servicing and maintenance by [SMS] of the Rail Line." (Compl. ¶ 15.) In addition, Section 9 of the Service Agreement states that SMS covenants "at [SMS's] sole cost and expense, promptly to comply with all laws and ordinances and notices, orders, rules, regulations and requirements of all federal, state and municipal governments. . . ." (Compl. ¶ 16.)

5

Plaintiff alleges that the Service Agreement terminated on December 21, 2011, 90 days after PRC sent the first termination notice to SMS. (Compl. 17.) SMS has not yielded the rail line, removed its equipment, or sought STB's authorization to abandon the rail line. (Compl. ¶ 18.) Plaintiff therefore argues that SMS is in default of its obligations under the Service Agreement. (Compl. ¶ 19.)

Because SMS refused to seek the STB's authorization to abandon the rail line, PRC sought authorization by filing a Petition for Adverse Discontinuance of Service Exemption before the STB ("First Petition") in January of 2012. (Compl. ¶ 21.) SMS opposed the First Petition. The STB dismissed the First Petition on procedural grounds in March of 2012. (Compl. ¶ 22.) PRC then filed a Petition for Waivers and Exemptions ("Second Petition") before the STB, once again seeking a streamlined process in which the STB would determine whether to approve abandonment of the rail line. (Compl. ¶ 23.) The STB granted the Petition for Waivers and Exemptions in July, 2012, according to counsel.[4]

Section 14 of the Service Agreement mandates that SMS

---

[4] At oral argument on December 17, 2012, Defendant's counsel informed the Court that PRC was not pursuing the abandonment application and produced a November 2, 2012 letter from Eric M. Hocky, counsel for PRC, to the Chief of the Administration Section of the STB Office of Proceedings announcing PRC's decision not to file an adverse abandonment application. Regardless of whether there is an abandonment application presently pending, the Court must determine whether it has jurisdiction over this action.

"shall reimburse [PRC] for any reasonable sums paid or costs incurred by [PRC] in curing such default. . . ." (Compl. ¶ 24.) And Section 16 mandates that SMS must surrender the rail line to PRC without cost or charge to PRC. (Compl. ¶ 27.) PRC has allegedly incurred significant costs in its efforts to cure SMS's default, terminate SMS's possession of the rail line, and enforce its rights under the Service Agreement. (Compl. ¶ 25.) In addition, PRC has allegedly incurred costs from SMS's failure to yield the rail line and the resulting delay in takeover by a successor rail service provider. (Compl. ¶ 26.)

PRC pleads three counts for relief. In Count I, PRC requests a declaratory judgment declaring, inter alia, that (1) pursuant to the Service Agreement, SMS was obligated to take all necessary steps to yield up the rail line, including obtaining the STB's authorization; (2) SMS's refusal to seek the STB's authorization was a default under, and breach of, the Service Agreement; and (3) SMS must pay the damages and costs, along with attorney's fees and interest, that SMS incurred as a result of the default.

Count II alleges breach of contract and seeks compensatory damages, interest, and costs of suit and attorney's fees. Count III alleges breach of the implied covenant of good faith and fair dealing.

### B. Defendant's Notice of Removal

Defendant removed the action to this Court [Docket Item 1] because it argued that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. SMS emphasized that it cannot abandon the rail line absent STB's authorization and that the abandonment determination is committed to the sole and exclusive jurisdiction of the STB. If the Court refers a question to the STB, then the Court would have exclusive jurisdiction to enforce the STB's decision, pursuant to 28 U.S.C. § 1336(b). SMS therefore argued that this action arises under federal law and is properly removed pursuant to 28 U.S.C. § 1441(a).

### C. Defendant's Motion to Refer and Stay

The same day that Defendant SMS filed the Notice of Removal, it also filed a motion to refer federal issues to the STB and for a stay pending the STB's decision ("Motion to Refer/Stay") [Docket Item 3]. SMS argued that Plaintiff sought relief requiring SMS to abandon the rail line and that such abandonment must be authorized by the STB. (Motion to Refer/Stay ¶ 7.) SMS argued that the determination of whether SMS may abandon the line is committed to STB's sole and exclusive jurisdiction.

SMS said the Court should refer the question of whether SMS should abandon the rail line to the STB because STB has exclusive jurisdiction and because the issue is a complex matter involving

technical and policy considerations within STB's field of expertise. Referral is "also appropriate to avoid the danger of inconsistent rulings" from this Court and the STB because proceedings are already pending before the STB. (Motion to Refer/Stay ¶ 17.) SMS also argued that, after referral, this Court would have exclusive jurisdiction to review STB's determination under 28 U.S.C. § 1336(b), which mandates that the district court that refers a question to the STB shall have exclusive jurisdiction to "enforce, enjoin, set aside, annul, or suspend" the STB order.

SMS argues that Plaintiff should only be allowed to return to this Court after STB has addressed the abandonment question and that a stay would prevent premature and duplicative discovery and conserve judicial resources. Essentially, SMS wants this Court to refer the abandonment question to the STB and stay the litigation until the STB issues a decision.

In Defendant's brief accompanying the Motion to Refer/Stay, Defendant also argues that "Plaintiff is guilty of forum shopping because it filed this action after it initiated" the STB proceedings. (SMS Mem. Supp. Motion to Refer/Stay at 3.)

### D. Plaintiff's Motion to Remand

Plaintiff opposed Defendant's Motion to Refer/Stay and, in the same document, filed a Motion to Remand. [Docket Item 10.]

9

In requesting a remand, PRC emphasized that this action does not raise a federal question, that PRC only seeks declaratory relief and monetary damages under state contract law, and that PRC does not seek any relief directing SMS to abandon the line because PRC already has an action pending before the STB. PRC noted that, pursuant to 49 C.F.R. 1002.2(f)(21)(i), the filing fee for an abandonment application is $22,100 excluding all other expenses, such as attorney's fees. The STB would not, PRC argues, have jurisdiction to resolve the dispute over who has responsibility under the Service Agreement to pursue and pay for necessary government approvals.

PRC argues that federal question jurisdiction does not exist because the Complaint does not raise federal issues. PRC argues that the fact that the STB has exclusive jurisdiction to determine abandonment is irrelevant because the Complaint does not seek a ruling removing SMS as operator. In addition, PRC sought attorney's fees for SMS's improper removal.

Finally, PRC asked the Court to deny SMS's motion to refer because the abandonment question is already pending before the STB. PRC also argues that because this Court lacks federal jurisdiction, it cannot consider the motion to refer.

### E. Subsequent Briefing

Defendant filed Opposition [Docket Item 14][5] to Plaintiff's Motion to Remand. The gravamen of Defendant's opposition is that federal claims lurk in the verbiage of Plaintiff's artfully pled Complaint and that Plaintiff's prayers for relief essentially seek SMS's abandonment of the rail line. For example, SMS argues that Plaintiff's statement that SMS "was obligated to take all necessary steps to yield up the Rail Line" indicates that Plaintiff seeks relief forcing SMS to abandon the rail line. (Def. Opp'n at 3.) Defendant also claims that the STB has made clear that access to state courts to resolve contractual disputes is impermissible until the STB has decided an abandonment application. Defendant also argues that STB's regulation preempts and supersedes any conflicting state law.

PRC filed a Reply [Docket Item 15] arguing that SMS took the Complaint's clear claims out of context and emphasizing that PRC did not seek abandonment with this action; it sought costs and a declaration that SMS must pay those costs of requesting approval.

Defendant then filed a Motion for Leave to File a Sur Reply [Docket Item 16], which Plaintiff opposed [Docket Item 17]. Defendant's Sur Reply argues that the Service Agreement does not specify which party must pay the costs of seeking the STB's

---

[5]Defendant's brief constituted both its Opposition to Plaintiff's Motion to Remand and its Reply to Plaintiff's Opposition regarding Defendant's Motion to Stay/Refer.

11

approval for abandonment. Defendant argues that the question of liability does not arise until the STB decides whether abandonment is permissible, thus making the contract claims premature. Defendant also argues that Plaintiff's reliance on 49 U.S.C. § 10709 is misplaced because that statute only applied to rate agreements, which are not an issue here. Defendant emphasizes again that the Complaint seeks abandonment and that access to the Courts is prohibited until the STB has decided the abandonment application.

The Court turns to Plaintiff's Motion to Remand.

### III. PLAINTIFF'S MOTION TO REMAND

#### A. Standard of Review

Federal courts are courts of limited jurisdiction, and they must have the power to hear a case. In re Morrissey, 717 F.2d 100, 102 (3d Cir. 1983). Removal of cases from state to federal courts is governed by 28 U.S.C. § 1441. That statute must be strictly construed against removal, so that the Congressional intent to restrict federal jurisdiction is honored. Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).

When, as in this case, there is no diversity of citizenship between the parties, "the propriety of removal turns on whether the case falls within the original federal question jurisdiction of the United States district courts." United Jersey Banks v.

Parell, 783 F.2d 360, 365 (3d Cir. 1986). Federal question jurisdiction exists if the action "arises under" the "Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The federal question "must appear on the face of the complaint, and . . . federal jurisdiction cannot be created by anticipating a defense based on federal law." United Jersey Banks v. Parell, 783 F.2d 360, 365 (3d Cir. 1986). The Court must therefore look to the face of the Complaint to determine whether a federal question exists, but "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California, 463 U.S. 1, 22 (1983). In other words, a court "will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim." United Jersey Banks v. Parell, 783 F.2d 360, 367 (3d Cir. 1986).

The Court must therefore undertake a precise inquiry when federal question jurisdiction is asserted in the context of a state-law claim that raises a federal issue: "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons

Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). If there is no disputed federal issue, then the Court lacks jurisdiction and must remand.

### B. Whether Federal Question Jurisdiction Exists

Defendant is correct that the STB must approve abandonment of a rail line. A rail carrier subject to the STB's jurisdiction who intends to "abandon any part of its railroad lines; or discontinue the operation . . . must file an application relating thereto with the Board." 49 U.S.C. § 10903(a). The statute further mandates that "[a]n abandonment or discontinuance may be carried out only as authorized under this chapter." 49 U.S.C. § 10903(a).

The statute specifies that the STB will not hear rail service contract disputes:

> One or more rail carriers providing transportation subject to the jurisdiction of the Board under this part may enter into a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions. . . . The exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree. <u>This section does not confer original jurisdiction on the district courts of the United States based on section 1331 or 1337 of title 28, United States Code</u>.

49 U.S.C. 10709(a), (c)(2) (emphasis added). Thus, Congress has made its intention clear that an action to enforce a rail

14

services contract may be brought in state court, or in a federal court if there is an independent basis of original jurisdiction, but that there is no conferral of federal question (§ 1331) or interstate commerce (§ 1337) jurisdiction upon the federal courts in this statute. Thus, if the parties to the rail services contract are not diverse, there is no basis for federal jurisdiction.

Defendant argues that reliance on 49 U.S.C. § 10709 is misplaced because that statute only applies to rate agreements, which are not an issue here. This statute does occur within the rates chapter of the rail part of the U.S. Code. The statute defines "rate" as "a rate or charge for transportation." 49 U.S.C. § 10102(7). The Service Agreement between PRC and SMS is, essentially, a contract regarding charges for rail transportation services. The Court therefore finds that 49 U.S.C. § 10709 applies herein.

Case law reinforces the Court's interpretation that STB regulations permit state court, breach-of-contract actions: "The STB itself has emphasized that courts, not the STB, are the proper forum for contract disputes, even when those contracts cover subjects that seem to fit within the definition of 'rail transportation.'" PCS Phosphate Co., Inc. v. Norfolk S. Corp., 559 F.3d 212, 220 (4th Cir. 2009).

The statute regarding remedies for such contract disputes is

15

clear. Yet Defendant claims that the STB has stated that access to state courts to resolve contractual disputes is impermissible until the STB has decided an abandonment application. Defendant does not cite the relevant federal regulations in support of this argument. Instead, Defendant quotes Norfolk Southern Railway Company – Adverse Abandonment – St. Joseph County, IN, STB Docket No. AB-290, 2008 STB Lexis 83 (STB Feb. 13, 2008). In that case, a city and two religious institutions filed abandonment petitions regarding an unused rail track that had been paved over in several places. The city and religious institutions said the rail line did not fit with local development plans. The STB explained that its standard of review was public convenience and necessity and that it must balance local interests opposing the rail line with national interests in interstate commerce. The STB explained its exclusive and plenary jurisdiction over abandonment applications and then stated,

> we do not allow our jurisdiction to be used to shield a line from the legitimate processes of state law where no overriding Federal interest exists. If we conclude that the [public convenience and necessity] does not require or permit continued operation over the track, our decision removes that shield, enabling the applicant to pursue other legal remedies to force the carrier off a line.

Id. at *7. This case contradicts Defendant's argument that a state court may not hear breach of contract claims until the STB has issued a decision. In Norfolk Southern, the STB considered a

16

petition to close a rail line completely, not simply to switch operators, which is the case here. The STB said that its jurisdiction may not "be used to shield a line from the legitimate processes of state law where no overriding Federal interest exists." <u>Norfolk Southern</u> referenced an applicant's right to pursue "other legal remedies to force the carrier off a line," not a contractual dispute over fees. It seems clear that the STB was explaining that, if abandonment were proper, the STB would not shield the rail line from such an outcome. <u>Norfolk Southern</u> does not stand for the proposition that a plaintiff cannot seek contractual relief until after the STB has issued a decision on a related issue.

As the STB itself has stated, the STB's jurisdiction may not "be used to shield" a rail line from a legitimate state law action. The Court therefore finds that STB regulations do not bar a breach of contract action in state court.

In this case, Plaintiff seeks a judgment that Defendant must pay the costs for the STB application based upon the language of the parties' Service Agreement, not based upon a claim of statutory entitlement to such costs. Whether or not the STB grants Plaintiff's application, Plaintiff will still have costs from making the application. This action involves who should pay those costs; that dispute does not involve any federal question, and, as noted above, Congress has specifically declined to confer

17

original federal jurisdiction under §§ 1331 or 1337. <u>See</u> 49 U.S.C. § 10709(c)(2). This action is a breach-of-contract action. When, as here, there is no diversity between the parties, the Court cannot exercise jurisdiction over this action.

Defendant's preemption arguments are inapposite. Plaintiff's requested relief is not an abandonment order; it is a declaration that SMS must pay costs and the costs themselves arising from Defendant's breach of the parties' contract. Preemption does not apply.

Defendant also argues that the Service Agreement does not specify which party must pay the costs of seeking the STB's approval for abandonment and that the contract claims are premature because the question of liability does not arise until the STB decides whether abandonment is permissible. These statements may be well be true, but they do not bear on federal jurisdiction; they go to the merits of Plaintiff's claims. The essence of this action is which party, under the Service Agreement's terms, must pay the costs of seeking STB approval. This is a contract interpretation issue. Even if, as Defendant argues, the Service Agreement mandates that there may be no decision on cost liability until the STB decides the abandonment question, the Service Agreement must be interpreted to make that determination. In other words, the question of liability for costs may be premature, but that determination is a contract

interpretation issue, not a federal question.

This action does not present a disputed federal issue; it is a breach-of-contract action between parties of non-diverse citizenship. The Court lacks jurisdiction and will remand to state court.

### C. The Court Will Deny PRC's Request for Attorney's Fees

PRC requested attorney fees on the grounds that SMS's notice of removal was improper. The Supreme Court has held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005). Given the connection between the breach of contract action and the federal laws governing abandonment, it does not seem unreasonable to the Court the Defendant sought to remove this action to federal court. The action does not belong here, but Defendant had a reasonable basis for removal. PRC's request for attorney's fees relating to removal is denied.

The Court's ruling is limited only to any attorney's fees that PRC incurred in litigating the removal and remand questions. This ruling must not be construed to opine on the litigation, which will now proceed in state court, regarding which party must bear the costs, including attorney's fees, of seeking STB approval and curing the alleged default of contract.

**IV. DEFENDANT'S MOTION TO REFER/STAY IS DISMISSED**

Because the Court finds that it lacks jurisdiction and must remand the action to state court, the Court cannot adjudicate Defendant's Motion to Refer/Stay [Docket Item 3], which will be dismissed as moot.

**V. CONCLUSION**

The Court lacks jurisdiction over this action, which does not present a federal question and does not involve diversity between the parties. Therefore, Plaintiff's motion to remand will be granted. The Court will not adjudicate Defendant's motion to refer/stay because the court lacks jurisdiction. The accompanying Order will be entered.

| | |
|---|---|
| December 19, 2012 | s/ Jerome B. Simandle |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |